**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Esaul Cordova Garcia, <br><br> *Petitioner*, <br><br> v. <br><br> Raul MALDONADO JR., Warden, Metropolitan Detention Center; Kenneth GENALO, New York Field Office Director for U.S. Immigration and Customs Enforcement; Todd BLANCHEL, Acting Attorney General of the United States; Markwayne MULLIN, Deputy Secretary of Homeland Security; and Todd M. LYONS, Acting Director, U.S. Immigration and Customs Enforcement, <br><br> *Respondents*. | Civil Action No. _____ <br><br><br> **EMERGENGY PETITION FOR WRIT OF HABEAS CORPUS** |

FIRM:69942141v1

Petitioner Esaul Cordova Garcia ("Mr. Cordova Garcia"), a Latino man who has resided in New York State since around 2009, and is the father of three United States Citizen children, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, the All Writs Act, 28 U.S.C. § 1651, and Article I, Section 9, of the Constitution of the United States. Mr. Cordova Garcia alleges the following in support of his petition:

## PRELIMINARY STATEMENT

1. Petitioner Esaul Cordova Garcia is in the physical custody of Respondents at the Metropolitan Detention Center (the "MDC") in Brooklyn, New York. He now faces unlawful detention because the Department of Homeland Security ("DHS") and the Executive Office of Immigration Review ("EOIR") have concluded that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).

2. Mr. Cordova Garcia is charged with, *inter alia*, having entered the United States without admission or inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

3. Based on this allegation in Mr. Cordova Garcia's removal proceedings, DHS denied Mr. Cordova Garcia release from immigration custody, consistent with a new DHS policy issued on July 8, 2025, instructing all Immigration and Customs Enforcement ("ICE") employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—*i.e.*, those who entered the United States without admission or inspection—to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

4. Similarly, on September 5, 2025, the Board of Immigration Appeals ("BIA" or "Board") issued a precedent decision, binding on all immigration judges, holding that an immigration judge has no authority to consider bond requests for any person who entered the

1

United States without admission. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

5. Mr. Cordova Garcia's detention on this basis violates the plain language of the Immigration and Nationality Act (the "INA"). Section 1225(b)(2)(A) does not apply to individuals like Mr. Cordova Garcia who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226, that allows for release on conditional parole or bond and requires an individualized determination upon arrest. That statute expressly applies to people who, like Mr. Cordova Garcia, are charged as inadmissible for having entered the United States without inspection.

6. Mr. Cordova Garcia's confinement is unlawful—as confirmed by a cascade of decisions, including within this District, that have rejected Respondents' interpretation of Section 1225(b)(2). Accordingly, he brings this petition seeking immediate and unconditional release.

7. He further asks this Court to enjoin his transfer outside this District. *Local 1814, Intern. Longshoremen's Ass'n, AFL-CIO v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1237 (2d Cir. 1992) ("Once the district court acquires jurisdiction over the subject matter of, and the parties to, the litigation, the All Writs Act [28 U.S.C. § 1651] authorizes a federal court to protect that jurisdiction." (cleaned up)); *Minarcaja Concha v. Lyons*, No. 2:25-CV-6695 (NJC), 2026 WL 307170, at *2 (E.D.N.Y. Feb. 4, 2026) (prohibiting Petitioner's removal from the U.S. and "prohibit[ing] Respondents from transferring Petitioner to a detention facility outside of … the New York City area … in light of Petitioner's interests in participating in further proceedings before this Court and in maintaining adequate access to legal counsel …"); *Perez y Perez v. Noem*, 25 Civ. 4828 (DEH), 2025 WL 1908284, at *2 (S.D.N.Y. June 13, 2025).

8.       Alternatively, Mr. Cordova Garcia respectfully asks the Court to issue an order to show cause and hold a hearing pursuant to 28 U.S.C. § 2243 on the expedited basis set forth in the statute, during which the Court should (1) find that Mr. Cordova Garcia's detention violates federal law and (2) order his release.

## PARTIES

9.       Petitioner ESAUL CORDOVA GARCIA has been in immigration detention since February 18, 2026.   Mr. Cordova Garcia is unable to obtain review of his custody by an immigration judge, pursuant to the Board's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

10.       Respondent RAUL MALDONADO JR. is named in his official capacity as the Warden of the MDC, located at 80 29th Street, Brooklyn, New York 11232.  He is responsible for the operation of the MDC and for the custody and supervision of all individuals detained there, including Mr. Cordova Garcia.

11.       Respondent KENNETH GENALO is named in his official capacity as the Field Office Director for U.S. Immigration and Customs Enforcement's New York Field Office, located at 26 Federal Plaza, New York, New York 10278.  He is responsible for the administration and enforcement of the immigration laws within the jurisdiction of the New York Field Office, including the execution of immigration detention warrants and removal orders.

12.       Respondent TODD BLANCHE is named in his official capacity as the Acting Attorney General of the United States, the head of the United States Department of Justice ("DOJ"), located at 950 Pennsylvania Avenue, N.W., Washington, District of Columbia 20530. He is responsible for the policies and operations of the DOJ.

3

13.     Respondent MARKWAYNE MULLIN is named in his official capacity as the Secretary of the DHS, located at 800 K Street, N.W., #1000, Washington, District of Columbia, 20528.  He directs each of the component agencies within DHS, including ICE.

14.     Respondent TODD M. LYONS is named in his official capacity as Acting Director of ICE, located at 500 12th Street, S.W., Washington, District of Columbia 20536.  He directs ICE operations and is responsible for the administration of the immigration laws.

## JURISDICTION AND VENUE

15.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 2241 (habeas corpus); 28 U.S.C. § 1331 (federal question); Article I, § 9, cl. 2 of the United States Constitution (Suspension Clause); and 28 U.S.C. § 1651 (All Writs Act).

16.     The federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the lawfulness of their detention by DHS.  *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

17.     Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-500 (1973), venue is proper in this District under 28 U.S.C. § 2241 and 28 U.S.C. § 1391. Mr. Cordova Garcia is incarcerated at the MDC, within this District; the ICE office that controls the location of his detention is based in New York City; and a substantial part of the events giving rise to the claims and relevant facts occurred in this District.

## EXHAUSTION

18.     Mr. Cordova Garcia is not required to exhaust administrative remedies because doing so would be futile.

19.     Exhaustion of administrative remedies in immigration detention cases is considered a prudential concern, rather than a statutory requirement.  *See, e.g.*, *Yin v.*

4

*Maldonado*, No. 26-CV-0103 (PKC), 2026 WL 295389, at *2 (E.D.N.Y. Feb. 4, 2026) ("There is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention."); *accord Quintanilla v. Decker*, No. 21 Civ. 417 (GBD), 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021) (citing *Joseph v. Decker*, No. 18 Civ. 2640 (RA), 2018 WL 6075067, at *5 (S.D.N.Y. Nov. 21, 2018)).

20.     Such exhaustion may be excused when any of the following apply:  "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question."  *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003).

21.     Mr. Cordova Garcia's case meets every requirement.  Not only will he face irreparable injury if his detention continues, and not only does his petition raise substantial constitutional questions, but intervening events have rendered administrative appeal futile and unable to provide a genuine opportunity for adequate relief.

22.     On September 5, 2025, the Board decided *Matter of Yajure Hurtado*, a precedential decision finding that all noncitizens who, like Mr. Cordova Garcia, have not been admitted to the United States are *per se* ineligible for bond, even if they are neither a danger nor a flight risk. 29 I. & N. Dec. 216 (BIA 2025).  Thus, the BIA will be bound to find that Mr. Cordova Garcia is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and deny his release.  This is true although the overwhelming majority of district courts in the country that have heard a challenge to this reading of the statute has rejected it out of hand.

## STATEMENT OF FACTS

5

23.    Mr. Cordova Garcia is a man of Latino descent who has resided in New York State for fifteen years nearly. *See* Exh. A, Declaration of Aurora Maoz, Esq. ("Maoz Decl."), ¶ 4. In the United States, he resides with his long-term domestic partner, with whom he has three young children, all of whom are United States citizens. (*Id.*).

24.    On February 18, 2026, Mr. Cordova Garcia was arrested by numerous masked ICE officials while attempting to drive away in his vehicle. (*Id.*, ¶ 5.) Mr. Cordova Garcia has been detained by ICE ever since without a bond hearing, and he is now detained at the MDC in Brooklyn, New York. (*Id.*, ¶ 7.)

25.    DHS placed Mr. Cordova Garcia in removal proceedings on February 18, 2026, and his case is currently venued before the Varick Street Immigration Court in New York, NY pursuant to 8 U.S.C. § 1229(a). (Maoz Decl., ¶ 5.) ICE has charged Mr. Cordova Garcia with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. (*Id.*).

26.    Mr. Cordova Garcia has resided in New York for fifteen years; he has a long-term partner with whom he is raising three young children, all of whom are United States citizens; he is an active member of his community in Suffolk County, Long Island. (Maoz Decl., ¶ 4.) During that time, he has held steady jobs as a painter and, before his detention, he was the primary breadwinner for his family. (*Id.*). Mr. Cordova Garcia was arrested once before in 2012 for an incident that occurred that year, and he pleaded guilty in 2022 to unlawful surveillance arising from that 2012 incident. (*Id.*, ¶ 9.) Upon information and belief, ICE has not alleged that this conviction is the basis for his mandatory detention or removal proceedings. (*Id.*)

27.    Mr. Cordova Garcia is neither a flight risk nor a danger to the community.

28.     Notwithstanding, pursuant to *Matter of Yajure Hurtado*, the immigration judge is unable to consider Mr. Cordova Garcia's bond request.

29.     As a result, Mr. Cordova Garcia remains in detention.  Without relief from this court, he faces the prospect of months, or even years, in immigration custody, separated from his family – including his young children – and community.

## LEGAL BACKGROUND

### A.     Immigration Detention Framework

30.     The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

31.     First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an immigration judge ("IJ").  *See* 8 U.S.C. § 1229a.  Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

32.     Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

33.     Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings.  *See* 8 U.S.C. § 1231(a)–(b).

34.     This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

35.     Detention under Section 1226(a) is discretionary, not mandatory; the government "may release the [noncitizen] on—(A) a bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or (B) conditional parole[.]"  8 U.S.C.§

7

1226(a)(2)(A)–(B).20.    Under the Section 1226 framework, release is appropriate where a noncitizen "demonstrate[s] to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the [noncitizen] is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8); *Hyppolite v. Noem*, 808 F. Supp. 3d 474, 491 (E.D.N.Y. 2025). Section "1226(a) and its implementing regulations require ICE officials to make an individualized custody determination." *Hyppolite v. Noem*, 808 F. Supp. 3d at 491 (quoting *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020)); *see also Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 493 (S.D.N.Y. 2025). If, after an individualized consideration, ICE chooses to detain the noncitizen pursuant to Section 1226(a) pending removal proceedings, the individual may ask for a bond redetermination hearing before the immigration judge. 8 C.F.R. §1003.19.

36.    In contrast with Section 1226, which applies to "certain [noncitizens] *already in the country*," *Jennings v. Rodriguez*, 583 U.S.281, 289 (2018) (emphasis added), Section 1225(b) governs detention of noncitizens seeking entry into the United States (*i.e.*, "applicants for admission"). In other words, Section 1225(b) mandates detention for those noncitizens subject to it, and they are not eligible to be considered for release.

37.    Section 1225(b)(2)(A) applies to a narrower subset of applicants for admission. It provides that, "if the examining officer determines that a[] [noncitizen] *seeking admission* is not clearly and beyond a doubt entitled to be admitted, the [noncitizen] *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

38.    For decades after the enactment of detention provisions at § 1226(a) and § 1225(b)(2), people who entered the country without inspection but who were already in the United States at the time of an ICE arrest were detained under § 1226(a) rather than § 1225(b)(2). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of

8

Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).  As the Supreme Court has made clear, "Section 1226(a) sets out the default rule:  The Attorney General may issue a warrant for the arrest and detention of an [noncitizen] 'pending a decision on whether the [noncitizen] is to be removed from the United States.'" *Jennings*, 583 U.S. at 287-89.

39.    On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy[1] that rejected well-established understanding of the statutory framework and reversed decades of practice. The policy claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A), regardless of when a person is apprehended, and affects those who have resided in the United States for months, years, and—as in Mr. Cordova Garcia's case—fifteen years.

40.    On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado*.  There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

41.    Since Respondents adopted their new policy, almost every district court that has confronted this issue "has concluded that the government's [new] position belies the statutory text of the INA, canons of statutory interpretation, legislative history, and longstanding agency practice." *Rodriguez,* 2025 WL 2782499, at *1 (collecting 22 recent cases finding against the government's interpretation);[2] *Hyppolite*, 808 F. Supp. 3d at 484 (finding that, at that time, the

---

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

[2] *See*, *e.g.*,  *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475 (S.D.N.Y. 2025); *Barbosa Da Cunha v. Moniz*, 6:25-cv-06532 (MAV) (W.D.N.Y. Oct. 20, 2025), *Aceros, v. Kaiser*, 25-CV-06924 (EMC), 2025 WL 2637503 (N.D. Cal. Sept. 12, 2025); *Maldonado Vazquez v. Feeley*, 2:25-CV-01542-RFB (EJY), 2025 WL 2676082 (D. Nev. Sept. 17, 2025); *Romero v. Hyde*, CV 25-11631 (BEM), 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Martinez v. Hyde*, CV 25-11613 (BEM),

government cannot point to an Article III court that has adopted their expansive construction of § 1225(b)(2)); *Artiga v. Genalo*, No. 25-CV-5208 (OEM), 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025) (same). Indeed, "the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States. (citing appendices containing references to the 362 cases) (emphasis in original).

42.     District courts have almost uniformly rejected DHS's and EOIR's new interpretation because it defies the INA.[3]

---

2025 WL 2084238 (D. Mass. July 24, 2025) (denying government's motion for reconsideration); *Gomes v. Hyde*, No. 1:25-CV-11571 (JEK), 2025 WL 1869299 (D. Mass. July 7, 2025); *dos Santos v. Lyons*, No. 1:25-CV-12052 (JEK), 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Aguilar Maldonado v. Olson*, --- F. Supp. 3d ----, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Velasquez Salazar v. Dedos*, No. 25-cv-835, 2025 WL 2676729 (D.N.M. Sept. 17, 2025); *Beltran Barrera v. Tindall*, 3:25-CV-541 (RGJ), 2025 WL 2690565 (W.D. Ky. Sept. 19, 2025); *Lopez-Campos v. Raycraft*, 2:25-CV-12486, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Reyes v. Raycraft,*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Jimenez v. FCI Berlin, Warden*, 25-CV-326-LM-AJ, 2025 WL 2639390 (D.N.H. Sept. 8, 2025); *Chogllo Chafla v. Scott*, 2:25-CV-00437 (SDN), 2025 WL 2688541 (D. Me. Sept. 21, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-CV-01789-ODW (DFMX), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025) (granting individualized bond hearings on ex parte motion for temporary restraining order after finding likelihood of success); *Mosqueda v. Noem*, 5:25- CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025) (same); *Kostak v. Trump*, CV 3:25-1093, 2025 WL 2472136 (W.D. La. Aug. 27, 2025) (same); *Garcia Jimenez v. Kramer*, No. 4:25CV3162, 2025 WL 2374223 (D. Neb. Aug. 14, 2025) (granting relief from stay of bond order pending BIA appeal); *Mayo Anicasio v. Kramer*, 2025 WL 2374224 (D. Neb. Aug. 14, 2025) (same).

[3] Two divided courts of appeals' panels have agreed with the government's statutory interpretation. *Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). These decisions, however, are stark outliers among the Article III courts across the country that have rejected this same argument, As

43.     The government's recently adopted position also ignores the text of § 1225(b)(2). For § 1225(b)(2) to apply, an examining immigration officer must make three separate determinations:  that a person is 1) an applicant for admission; 2) seeking admission; and 3) not clearly and beyond a doubt entitled to be admitted.  Section 1225(a)(1) defines an "applicant for admission" as "[a noncitizen] present in the United States who has not been admitted or who arrives in the United States."  "Under a straightforward reading of the statute," moreover, "'seeking admission is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering.'"  *Rodriguez-Acurio v. Almodovar*, No. 2:25-CV-6065 (NJC), 2025 WL 3314420, at *22 (E.D.N.Y. Nov. 28, 2025) (quoting *Hyppolite*, 2025 WL 2829511, at *9).  To be sure, the term "'seeking admission . . . necessarily implies some sort of present-tense action.'"  *Rodriguez-Acurio*, 2025 WL 3314420, at *22 (quoting *Martinez v. Hyde*, No. CV 25-11613 (BEM), 2025 WL 2084238, at *6 (D. Mass. July 24, 2025)).  The government's interpretation that all inadmissible individuals are "seeking admission" within the meaning of § 1225(b) renders the meaning of the term identical to the statutorily defined term "applicant for admission."  Such an interpretation violates the rule of surplusage and negates the plain meaning of text.  *See Rodriguez-Acurio*, 2025 WL 3314420, at *23 ("In other words, Respondents' reading of Section 1225(b)(2)(A) would render the phrase 'seeking admission' in the statute superfluous.")

---

described by Judge Merchant, for example, the majority's reasoning in the Court of Appeals for the Fifth Circuit's decision "is not persuasive."  As noted by Judge Douglas in dissent, the notion that there is no meaningful difference between an 'applicant for admission' and 'a[] [noncitizen] seeking admission' in § 1225 is not 'consistent with the statutory definition of 'admission,' the provision's context, the Supreme Court's understanding of the statutory scheme, and the whole history of American immigration law.'"  *Acuapan v. Bondi*, 26-CV-00384 (OEM), 2026 WL 507889, at *4 (E.D.N.Y. Feb. 24, 2026) (*quoting Buenrostro-Mendez*, 166 F.4th at 510) (Douglas, J., *dissenting*).  "This reading of the statute 'would mean that, for purposes of immigration detention, the border is now everywhere.  That is not the law Congress passed, and if it had, it would have spoken much more clearly.'"  *Id.* at *4 (*quoting Buenrostro-Mendez*, 166 F.4th at 520-21) (Douglas, J., *dissenting*).

11

44. The legislative history further shows that § 1226(a) was intended to "restate[] the [then-]current provisions in [the predecessor statute] regarding the authority of the Attorney General to arrest, detain, and release on bond [a noncitizen] who is not lawfully in the United States.'" *Lopez v. Trump*, No. 2:25-CV-863, 2025 WL 3264151, at *4 (D. Vt. Nov. 7, 2025) (quoting H.R. Rep. No. 104-469, pt. 1, at 229; citing H.R. Rep. No. 104-828, at 210 (1996)). Indeed, shortly after Immigration Reform and Immigration Responsibility Act's enactment, the former Immigration and Naturalization Service and the EOIR (which houses the Immigration Courts and BIA) issued an interim rule to implement the statute that expressly stated: "Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

45. Thus, for almost 30 years, all participants in the immigration system have understood that people arrested inside the United States generally fall within § 1226 for detention purposes and therefore, unless subject to bars not applicable here, are required to receive a bond hearing upon request—even if they initially entered the country without permission. Such a longstanding and consistent interpretation "is powerful evidence that interpreting the Act in [this] way is natural and reasonable." *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting); *see also Bankamerica Corp. v. United States*, 462 U.S. 122, 130 (1983) (relying in part on "over 60 years" of government interpretation and practice to reject government's new proposed interpretation of the law at issue).

46. The LRA amendments to § 1226 that occurred just this year, § 119, 139 Stat. 3, also confirmed widespread understanding that individuals not admitted or paroled were still detained pursuant to § 1226(a) if they were detained while already in the United States. Again, if

12

every noncitizen who was present without being admitted was already subject to mandatory detention under § 1225(b)(2), Congress would have had no reason to pass an entirely new provision in order to make those individual subject to mandatory detention under § 1226(c)(1)(E) if they committed or were accused of committing one of the listed crimes.

47.    Mr. Cordova Garcia was arrested after about fifteen  years of continuous presence in the United States, not while "seeking admission."  (*See* Maoz Decl., ¶ 4.)

48.    Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Mr. Cordova Garcia, who have already entered and were residing in the United States at the time they were apprehended.  His detention is governed by § 1226(a), and his continued detention under § 1225(b)(2) is in excess of statutory authority and *ultra vires.*

**B.    Noncitizens' Procedural Due Process Rights**

49.    The Due Process Clause of the Fifth Amendment entitles noncitizens to due process of law.  *Reno v. Flores*, 507 U.S. 292, 306 (1993).  As clearly enunciated by the Supreme Court, the protection of the Due Process Clause applies to noncitizens in the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (citations omitted).

50.    Stated simply, "while [DHS] might want to enforce this country's immigration laws efficiently, it cannot do that at the expense of fairness and due process."  *Ceesay v. Kurzdorfer*, No. 25-CV-267, 2025 WL 1284720, at *1 (W.D.N.Y. May 2, 2025) (citing *United States ex. rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–68 (1954)).

51.    Further, noncitizens are entitled to procedural due process protections, even in the face of policy shifts between administrations.  While a "new administration can change the rules …

13

it cannot change them and make up new rules as it goes along when the new rules abridge constitutional rights." *Velasquez v. Kurzdorfer*, No. 25-CV-493, 2025 WL 1953796, at \*14 (W.D.N.Y. Jul. 16, 2025).

52.     In the context of immigration detention due process claims, the Second Circuit has applied the three-factor balancing test set forth in *Mathews v. Eldridge* to determine what due process requires.  These factors are: (i) "the private interest that will be affected by the official action;" (ii) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (iii) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020).

53.     Under the *Mathews* rubric, the private interest affected by official action – the interest in being free from imprisonment, physical restraint, or other forms of government custody – is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Lopez Benitez*, 795 F. Supp. at 492 ("[Petitioner] invokes the most significant liberty interest there is— the interest in being free from imprisonment") (quoting *Velasco Lopez*, 978 F.3d at 851 ("Case after case instructs us that in this country liberty is the norm and detention is the carefully limited exception")) (citing *Hamdi*, 542 U.S. at 529); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. Nov. 22, 2019) (noncitizens in immigration custody had an arguably even greater liberty interest in remaining out of detention than criminal parolees who required due process protection).

54.     With respect to the second *Mathews* factor, given the strong liberty interest at stake, the Fifth Amendment's guarantee of due process requires at least some notice and an opportunity to be heard before a person can be placed in immigration detention.  *Trump v. J.G.G.*, 604 U.S.

14

670, 673 (2025). Further, due process requires that "notice must be afforded within a reasonable time and in such manner as will allow [noncitizens] to actually seek … relief[.]" *Id.*

55.    For the third *Mathews* factor, "the Attorney General's discretion to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate government purpose." *Velasco Lopez*, 978 F.3d at 854. The recognized government interests in immigration detention are "ensuring the appearance of [noncitizens] at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690.

56.    Further, in light of a noncitizen's due process rights and the procedural rights conferred by Section 1226(a) and the implementing regulations, a decision to detain a noncitizen requires an *individualized determination* as to the noncitizen's risk of flight and danger to the community. *See Velesaca*, 458 F. Supp. 3d at 235; *Lopez Benitez*, 795 F. Supp. at 495; *Kelly v. Almodovar*, No. 25-CV-6448, 2025 WL 2381591, at *3 (S.D.N.Y. Aug. 15, 2025).

57.    All three *Mathews* factors strongly favor Mr. Cordova Garcia, as the process afforded to him was woefully inadequate. The first factor weighs heavily in his favor: his private interest, freedom from imprisonment, is among the most "elementary of liberty interests." *Hamdi*, 542 U.S. at 529. The second factor also weighs strongly in favor of Mr. Cordova Garcia, as due process requires that notice and an opportunity to be heard be provided *before* an individual is subjected to immigration detention. *J.G.G.*, 604 U.S. at 673. Mr. Cordova Garcia neither received process prior to his detention, nor has he received process to date. Indeed, "the complete lack of any pre- or post-deprivation notice and opportunity for [Mr. Cordova Garcia] to be heard before a DHS officer or immigration judge gives rise to an extraordinarily high risk of erroneous deprivation[.]" *Rodriguez-Acurio v. Almodovar*, 81 F.Supp.3d 274, 317 (E.D.N.Y. 2025). As for the third factor, the government does not have a legitimate interest in detaining Mr. Cordova

15

Garcia:  He is a productive member of his community in Suffolk County, Long Island; the primary breadwinner for a family of five – including three young children, all U.S. citizens – and his long-term partner; and he has maintained steady employment as a painter throughout his almost fifteen years living in this country.  (*See* Maoz Decl., ¶ 4.)  He is neither a flight risk nor a danger to his community.

58.    Crucially, recent decisions by federal courts across the country confirm that due process requires the government to make *individualized determinations* to detain noncitizens and give them notice and a meaningful opportunity to be heard when challenging their detention. *See, e.g.*, *Rodriguez-Acurio*, 81 F.Supp.3d at 316; *Cuy Comes v. DeLeon*, No. 25 CIV. 9283 (AT), 2025 WL 3206491, at *6 (S.D.N.Y. Nov. 14, 2025).  As recently explained by a court in this district, under the authority granted to DHS officers to grant bond or conditional parole pursuant to the regulations implementing Section 1226(a), "a DHS officer ***must*** *make an individualized determination* as to whether detention is appropriate." *Rodriguez-Acurio*, 81 F.Supp.3d at 316.

59.    Release is the proper remedy where – as here – a noncitizen does not receive individualized consideration *pre-deprivation* and his due process rights are irrevocably violated. No amount of procedure provided post-detention can remedy that violation.  As a result, courts have ordered a noncitizen's immediate release when this occurs, because no procedural alternative to release can serve as an effective remedy. *See, e.g.*, *Rodriguez-Acurio*, 2025 WL 3314420, at 319.  In analogous circumstances, the *Rodriguez-Acurio v. Almodovar* court recently held that a petitioner's "detention was unlawful from its inception because ICE detained her under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a)." *Id.*, at 319.  The court further explained that "[i]n

16

this situation, a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity for relief because the detention without adequate pre-deprivation procedures has already been carried out." *Id.*  Accordingly, the court ordered the petitioner's immediate release. *Id.*; *Cuy Comes*, 2025 WL 3206491, at *6 (ordering immediate release where Petitioner's first encounter with ICE was a detention without an individualized determination); *Perez Velasquez v. Noem*, No. 25 CIV. 10338 (AT), 2025 WL 3707526, at *4 (S.D.N.Y. Dec. 22, 2025) (same); *Campos v. Deleon*, No. 25-CV-10099 (LJL), 2025 WL 3514120, at *2 (S.D.N.Y. Dec. 8, 2025) (same; collecting cases); *Tumba v. Francis*, No. 25-cv-8110 (LJL), 2025 WL 3079014, at *8-9 (S.D.N.Y. Nov. 4, 2025) (ordering release); *Hyppolite*, 2025 WL 2829511, at *16 (same); *Lopez Benitez*, 795 F. Supp. at 497 ("Given the nature of the constitutional violation Mr. Lopez Benitez sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment before detaining him—any post-deprivation review by an immigration judge would be inadequate."); *see also Chipantiza-Sisalema*, 2025 WL 1927931, at *3 (finding bond "hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause.") (citation modified); *Kelly*, 2025 WL 2381591, at *3 (same).

58.    Here, too, immediate release is appropriate because Respondents have not—and cannot—show that they conducted an individualized determination regarding Mr. Cordova Garcia's dangerousness or flight risk before his summary arrest. *See, e.g.*, *Rodriguez-Acurio*, 2025 WL 3314420, at 319; *Cuy Comes*, 2025 WL 3206491, at *6; *Perez Velasquez*, 2025 WL 3707526, at *4; *Campos*, 2025 WL 3514120, at *2; *Tumba*, 2025 WL 3079014, at *8-9; *Hyppolite*, 2025 WL 2829511, at *16; *Lopez Benitez*, 795 F. Supp. at 497; *see also Munaf v. Geren*, 553 U.S. 674,

17

693 (2008) ("The typical remedy [for unlawful detention] is, of course, release.") (citation omitted).

59.     Respondents' improper reliance on Section 1225(b)(2)'s mandatory detention provision establishes their decision to forgo any evaluation of whether Mr. Cordova Garcia's circumstances would otherwise warrant detention under Section 1226, which provides the sole lawful authority for detaining individuals residing in the U.S.

60.     Mr. Cordova Garcia's detention was unlawful from the moment he was detained and then taken into custody.  Respondents afforded him no process before detention and have baselessly asserted authority to subject him to mandatory detention.  "It is clear," moreover, "not only from the language of [28 U.S.C.] §§ 2241(c)(3) and 2254(a), but also from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that *the traditional function of the writ is to secure release from illegal custody*."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (emphasis added).  As discussed herein, Mr. Cordova Garcia remains illegally in custody.  Immediate release is the appropriate remedy. (*See supra* ¶¶ 57-58.)

61.     In the alternative, Mr. Cordova Garcia seeks at a minimum a bond hearing at which Respondents bear the burden of justifying his continued detention by clear and convincing evidence, and where a neutral adjudicator must take into consideration alternatives to imprisonment and ability to pay when determining bond.  *G.F.F. v. Francis*, No. 25-CV-7368 (JGK), 2025 WL 3141735, at *6 (S.D.N.Y. Nov. 10, 2025) (due process requires that alternatives to detention must be considered as to dangerousness); *accord Cantor v. Freden*, 761 F. Supp. 650, 639 (W.D.N.Y. 2025); *Castro Coneo v. Almodovar*, No. 25-CV-09850 (NSR), 2025 WL 3754079, at *6 (S.D.N.Y. Dec. 29, 2025); *see also L.G.M. v. LaRocco*, No. 25-CV-2631 (PKC), 2025 WL

18

2173577, at *3-4 (E.D.N.Y. July 31, 2025) (reaching the same conclusion when ordering a burden-shifted bond hearing where petitioner was held under 8 U.S.C. § 1226(c)). Although he submits this is insufficient to vindicate the immense due-process violation inherent in his lawless detention, a constitutionally sufficient bond hearing is a mechanism to mitigate his continued unlawful confinement.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION:
### VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C. § 1226(a) AND IMPLEMENTING REGULATIONS

62.    Mr. Cordova Garcia realleges and incorporates by reference each and every allegation contained above.

63.    Because Mr. Cordova Garcia is not "seeking admission," he is not lawfully detained under 8 U.S.C. § 1225(b)(2) and his detention pursuant to that statute is *ultra vires* and not lawful.

64.    Rather, the proper statutory interpretation of the INA, consistent with decades of practice, is that an individual in Mr. Cordova Garcia's circumstances who is placed into removal proceedings is detained under 8 U.S.C. § 1226(a).

65.    8 U.S.C. § 1226(a) is, moreover, a discretionary statute. Since ICE arrested and detained Mr. Cordova Garcia under 8 U.S.C. § 1225(b)(2), the agency definitionally failed to exercise its discretion, violating the INA and implementing regulations. *See Ambroladze v. Maldonado*, No. 26-CV-0473 (PKC), 2026 WL 295405, at *2 (E.D.N.Y. Feb. 4, 2026) ("ICE's discretion-free detention of [Petitioner] abridged his rights under [Section] 1226 and violated due process").

19

**SECOND CAUSE OF ACTION:**
**ICE'S FAILURE TO EXERCISE ITS DISCRETION VIOLATES DUE PROCESS**
**AND THE IMMIGRATION AND NATIONALITY ACT**
**U.S. CONST. AMEND. V; 8 U.S.C. § 1226(a)**

66.     Mr. Cordova Garcia realleges and incorporates by reference each and every allegation contained above.

67.     Because Mr. Cordova Garcia was detained by ICE under a discretionary statute, 8 U.S.C. § 1226(a), the agency was required to exercise its discretion in deciding whether or not to detain him.   However, because ICE arrested and detained Mr. Cordova Garcia under 8 U.S.C. § 1225(b)(2), the agency necessarily failed to exercise its discretion.

68.     By refusing to exercise any discretion at all in his case, ICE denied Mr. Cordova Garcia the process that he was due under the discretionary detention statute, violating both the statute itself and the Due Process Clause of the Constitution.  *See, e.g.*, *Yao v. Almodovar*, No. 25 CIV. 9982 (PAE), 2025 WL 3653433, at *11 (S.D.N.Y. Dec. 17, 2025) (collecting cases).

**THIRD CAUSE OF ACTION:**
**VIOLATION OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C. § 1226(a),**
**AND IMPLEMENTING REGULATIONS**

69.     Mr. Cordova Garcia realleges and incorporates by reference each and every allegation contained above.

70.     Upon information and belief, Respondents are currently detaining Mr. Cordova Garcia pursuant to 8 U.S.C. § 1225(b)(2), its mandatory detention authority.

71.     However, Mr. Cordova Garcia was, at the time of his arrest and detention by Respondents, not seeking admission to the United States. He was already residing in the United States.  Section 1226 governs the detention of individuals residing within the United States, like Mr. Cordova Garcia, and implements a discretionary detention regime with the opportunity for release.

72.    Because Mr. Cordova Garcia detention should be governed by Section 1226, the application of the mandatory detention statute, 8 U.S.C. §1225(b), to Mr. Cordova Garcia is unlawful under the Immigration and Nationality Act.

### FOURTH CAUSE OF ACTION:
### VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT,
### 5 U.S.C. § 706(2)(A)

73.    Petitioner realleges and incorporates by reference each and every allegation contained above.

74.    The Administrative Procedure Act permits a reviewing court, as relevant here, to "hold unlawful and set aside agency, findings, and conclusions found to be—(A) arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law[.]".

75.    Agency action is arbitrary and capricious or an abuse of discretion where the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

76.    Petitioner's detention is final agency action reviewable under the APA because it marks the consummation of DHS's decision-making process and determines his rights under law.

77.    Petitioner's detention violates the APA in several ways:

78.    Respondents' assertion of authority to subject Petitioner to mandatory detention under § 1225(b)(2)(A) is in excess of statutory authority or limitations, and is ultra vires;

79.     Respondents' detention of Petitioner without the individualized determination as to danger and flight risk required by 8 U.S.C. § 1226(a) is an abuse of discretion and without observance of procedure required by law; and

80.     Respondents' detention of Petitioner therefore violates the APA.

## PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1.  Assume jurisdiction over this matter;

2.  Enjoin Respondents from transferring Mr. Cordova Garcia outside the jurisdiction of this Court or removing him from the United States pending the resolution of this case, pursuant to the All Writs Act;[4]

3.  Issue a writ of habeas corpus directing Respondents to immediately release Petitioner from custody without any additional restraints on his liberty, including electronic monitoring, and enjoining any re-detention under the immigration laws of the United States, pending a final determination in his removal proceedings;

4.  In the alternative, the Court should conduct a constitutionally adequate, individualized bond hearing for the Mr. Cordova Garcia within fourteen days.  If, instead, Respondents are ordered to carry out such a hearing in front of an impartial adjudicator, the Court should direct that at that hearing:

---

[4] *See Local 1814, Intern. Longshoremen's Ass'n, AFL-CIO*, 965 F.2d at 1237 ("Once the district court acquires jurisdiction over the subject matter of, and the parties to, the litigation, the All Writs Act [28 U.S.C. § 1651] authorizes a federal court to protect that jurisdiction" (cleaned up)); *Minarcaja Concha*, 2026 WL 307170, at *2; *see also* Order, *Ozturk v. Hyde*, No. 25-cv-374 at 68 (WKS) (D.Vt. Apr. 18, 2025), ECF No. 104 (ordering Petitioner's transfer from Louisiana back to Vermont).

    a.  ICE must bear the burden of establishing by clear and convincing evidence that continued detention is justified and that no alternatives to detention can mitigate flight risk *or* dangerousness;

    b.  The adjudicator must meaningfully consider alternatives to imprisonment such as release on recognizance, parole or electronic monitoring as they relate to *both* dangerousness and flight risk; and

    c.  The adjudicator must meaningfully consider Mr. Cordova Garcia's ability to pay if setting a monetary bond;

    d.  The Department of Homeland Security be prohibited from invoking an auto-stay in the event that the adjudicator orders Mr. Cordova Cordova Garcia's release on bond or other conditions;

    e.  This Court should retain jurisdiction over any ordered bond hearing and if the hearing takes place in immigration court, the Respondents must provide a transcript of said proceedings to this Court within one week of the hearing.

5. Award Mr. Cordova Garcia costs and reasonable attorneys' fees in this action as provided for by the Equal Access to Justice Act, 28 U.S.C. § 2412; and

6. Grant such further relief as the Court deems just and proper.


Respectfully Submitted,

23

Dated: April 9, 2026  
New York, NY

*/s/ Jessica G. Palmese*  
Jessica G. Palmese  
Denae Kassotis  
Epstein Becker & Green, P.C.  
875 Third Avenue  
New York, New York 10022  
Tel.: (212) 351-4500  
jpalmese@ebglaw.com  
dkassotis@ebglaw.com

*Pro Bono Counsel for Petitioner Esaul Cordova Garcia*

## VERIFICATION BY SOMEONE ACTING ON PETITIONER BEHALF PURSUANT TO 28 U.S.C. § 2242.

I, Aurora Maoz, submit this verification on behalf of the Petitioner as an attorney for Petitioner. I have discussed with the Petitioner the events described in the Petition. Based on those discussions, I hereby verify that the statements made in the foregoing Petition for Writ of Habeas Corpus are true and correct to the best of my knowledge.

Dated: 4/9/2026  
New York, NY

_____  
Aurora Maoz